IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                                                     )<br>                       Plaintiff,      )<br>                                                     )<br>                                                     )<br>                                                     )<br>TIMOTHY S. WEBSTER,           )<br>[DOB:      1961],                       )<br>                                                     )<br>                       Defendant.   )<br>_____ ) | No. 08- 00259-01-CR-W-DGK<br>Count One<br>18 U.S.C. § 371<br>[NMT: Five Years Imprisonment,<br>$250,000 Fine, Three Years Supervised<br>Release, Plus $100 Special Assessment] |

<u>I N F O R M A T I O N</u>

<u>THE UNITED STATES ATTORNEY CHARGES THAT</u>:

<u>COUNT ONE</u>

(Conspiracy to Commit Wire Fraud)

<u>BACKGROUND</u>

1. From in or about May 2002 to in or about December 2004, and at all times relevant herein:

    a. American Italian Pasta Company (AIPC) was a publicly held Delaware corporation with its headquarters in Kansas City, Missouri; and

    b. AIPC's principal business was the manufacture and sale of dry pasta. AIPC was the largest producer and marketer of dry pasta in North America, with plants located in Excelsior Springs, Missouri; Columbia, South Carolina; Tolleson, Arizona; and Verolanuova, Italy. AIPC also had a plant located in Kenosha, Wisconsin, that it closed in 2006.

Exhibit C

2. In or about October 9, 1997, AIPC conducted an initial public offering of its stock; and it was listed for trading on the New York Stock Exchange under the symbol PLB. The New York Stock Exchange suspended trading of AIPC's stock on December 20, 2006, and it was de-registered on April 23, 2007.

3. From at least as early as 2000, AIPC pursued a strategy of fueling its growth with acquisitions of branded pasta and increased production capacity by building new manufacturing plants and lines.

4. Beginning in May 1992 to in or about December 2005, defendant **TIMOTHY S. WEBSTER**, was employed as the President and Chief Executive Officer of AIPC.

### The Securities and Exhange Commission

5. The Securities and Exchange Commission (SEC) is an independent agency of the United States Government established in 1934 to enforce securities laws, to promote stability in the securities markets, and to protect investors.

6. Publicly-held companies are required by law to submit various reports to the SEC containing detailed financial data, including quarterly reports on Form 10-Q and annual reports on Form 10-K. The data submitted is required by law to be truthful and consistent with the underlying facts. The accounting information in these reports must be supplied in accordance with generally accepted accounting principles (GAAP).

7. Publicly-held companies are required by law to undergo an annual audit by an independent accounting firm to ensure that its financial data is prepared and reported to the SEC and the public in accordance with GAAP.

2

## Communications With Investors

8. The management officials of many publicly-traded or publicly-held companies, including AIPC, provide the investing public with predictions of, or guidance regarding, the anticipated earnings of the companies for upcoming reporting periods. Relying at least in part on a company's guidance, many professional securities analysts then disseminate to the public their own estimates of that company's expected performance. These earnings estimates or analyst expectations are closely followed by investors. Typically, if a company announces earnings that fail to meet analysts' expectations, the price of that company's securities declines.

9. In addition to the above, AIPC issued periodic reports of its financial performance to its shareholders and the investing public in the form of annual and quarterly reports and periodic press releases. Among the financial data AIPC included in these reports and releases was an earnings figure referred to as "operating profit or loss."

## THE CONSPIRACY

10. From at least May 2002 to in or about December 2004, in the Western District of Missouri, and elsewhere, defendant **TIMOTHY S. WEBSTER** knowingly and willfully conspired and agreed with others to commit an offense against the United States, that is, to devise a scheme and artifice to defraud holders of AIPC securities of the intangible right to the honest services of defendant WEBSTER and other members of AIPC management, by means of materially false pretenses, representations, and promises, and to utilize interstate wire communications for the purpose of executing that scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Goal of the Conspiracy

11. The principal goal of the conspiracy was to fraudulently inflate the earnings AIPC reported to the SEC and the investing public in order to conceal the true financial condition of AIPC.

## Execution of The Fraudulent Scheme

12. Between in or about May 2002 and in or about December 2004, defendant **WEBSTER** and his co-conspirators caused AIPC to misrepresent the true earnings and growth rate of the company to the SEC and the investing public.

13. Between in or about May 2002 and in or about December 2004, defendant **WEBSTER** and his co-conspirators acted to ensure that the earnings AIPC reported each quarter closely matched the results predicted by Wall Street securities analysts, for fear that any shortfall could trigger a decline in the price of AIPC stock.

14. To ensure that the earnings AIPC reported would meet the expectations of analysts, defendant **WEBSTER** and his co-conspirators kept members of the analyst community well informed as to earnings growth targets AIPC expected to achieve.

## Inflation of Reported Earnings to Meet Targets

15. At the end of the first three quarters and at the end of each fiscal year, defendant **WEBSTER** and his co-conspirators reviewed AIPC's earnings figures to determine whether AIPC met the earnings target for the quarter. These earnings figures were inflated as described in paragraphs 19 through 21. If the consolidated quarterly earnings failed to meet the earnings target, defendant **WEBSTER** and his co-conspirators increased the earnings figure so that AIPC met or exceeded the earnings target.

16. As directed by defendant **WEBSTER** and his co-conspirators, others adjusted accounting entries in order to meet earnings targets. These adjustments had no basis in fact. The purpose of these adjustments was to meet or exceed AIPC's earnings target. After AIPC's earnings figure was fraudulently increased in this manner, defendant **WEBSTER** and his coconspirators caused the fraudulently increased earnings figure to be reported to the SEC and the investing public by interstate wire communications.

### Methods Used by the Conspirators to Cover Up Their Inflation of AIPC's Earnings

17. In order to permit AIPC to withstand the scrutiny of its required annual audit, the conspirators caused false accounting entries to be made to AIPC's books to inflate earnings and knowingly failed to make accurate accounting entries to AIPC's books that would negatively impact AIPC's earnings. These false accounting entries, and failures to make accurate accounting entries, were designed to support the fraudulent increases in earnings that the conspirators made during a fiscal quarter or year end.

18. In order to disguise their fraudulent inflation of AIPC's earnings, defendant **WEBSTER** and his conspirators used fraudulent accounting machinations as described in paragraphs 19 through 21 below and falsely represented to the SEC and the investing public that the company was following its publicly declared accounting policies.

19. In or about September 2003 to in or about February 2004, defendant **WEBSTER** and his co-conspirators fraudulently structured round-trip cash transactions with Mrs. Leeper's, Inc. ("Leeper's") to give the false impression that Leeper's reimbursed to AIPC over $2 million of costs. Defendant **WEBSTER** and his co-conspirators caused AIPC to improperly capitalize operating expense from the Leeper's round-trip cash transactions. By so doing, defendant

5

**WEBSTER** and his co-conspirators fraudulently caused the earnings AIPC reported for its fiscal year ending 2003 to be overstated by approximately $1.3 million and for its fiscal year ending 2004 to be overstated by approximately $1 million.

20. In or about October 2003 to in or about May 2004, defendant **WEBSTER** and his co-conspirators caused AIPC to fraudulently understate research and development expenses by approximately $1 million by falsely claiming that Atkins Nutritionals, Inc. agreed to reimburse such costs. By doing so, defendant **WEBSTER** and his co-conspirators fraudulently caused the earnings AIPC reported for its first quarter of 2004 to be overstated by approximately $1 million.

21. In or about November 2003 to in or about February 2004, defendant **WEBSTER** and his co-conspirators fraudulently structured a round-trip cash transaction with Smart & Final to give the false impression that Smart & Final had agreed to an approximately $345,774 retroactive price increase. Defendant **WEBSTER** and his co-conspirators caused AIPC to improperly recognize revenue from the Smart & Final round-trip cash transaction and by doing so caused the earnings AIPC reported for its first quarter of 2004 to be overstated by approximately $345,774.

22. Defendant **WEBSTER** and his co-conspirators knew there was no justification in fact, or under GAAP, for the fraudulent acts set forth in paragraphs 19 through 21. Defendant **WEBSTER** and his co-conspirators committed these acts knowing and intending that: a) these fraudulent acts would ultimately be reflected in AIPC's financial statements and public filings with the SEC; b) AIPC's financial statements and public filings would falsely overstate AIPC's earnings; and c) the investing public would rely upon such overstated earnings.

### Impact on Earnings Reports of AIPC

23. By the means set forth above, defendant **WEBSTER** and his co-conspirators fraudulently caused AIPC to misreport AIPC's earnings as set forth below:

    a. The conspirators caused AIPC to report operating income for its fiscal year ending 2003 which was overstated, in all, by at least $1.3 million; and

    b. The conspirators caused AIPC to report operating income for its first quarter of 2004 which was overstated, in all, by at least $2.3 million.

### Overt Acts

24. In furtherance of the conspiracy and to accomplish its unlawful objects, defendant **WEBSTER** and his co-conspirators committed and caused to be committed the following overt acts in the Western District of Missouri, and elsewhere:

    a. On or about November 5, 2003, at Kansas City, Missouri, defendant **WEBSTER** and his co-conspirators caused AIPC to issue a press release by interstate wire communications announcing its earnings for the fiscal year ending 2003 in which those earnings were overstated as set forth in paragraph 23(a) above.

    b. On or about December 30, 2003, at Kansas City, Missouri, defendant **WEBSTER** and his co-conspirators caused AIPC to file with the SEC by interstate wire communications an annual report on Form 10-K for the fiscal year ending 2003 in which AIPC's operating income for that year was overstated as set forth in paragraph 23(a) above.

    c. On or about January 28, 2004, at Kansas City, Missouri, defendant **WEBSTER** and his co-conspirators caused AIPC to issue a press release by interstate wire

communications announcing its earnings for the first quarter of 2004 in which those earnings were overstated as set forth in paragraph 23(b) above.

   d. On or about February 17, 2004, at Kansas City, Missouri, defendant **WEBSTER** and his co-conspirators caused AIPC to file with the SEC by interstate wire communications a quarterly report on Form 10-Q for the first quarter of 2004 in which AIPC's operating income for that year was overstated as set forth in paragraph 23(b) above.

   All in violation of Title 18, United States Code, Section 371.

                _____
                John F. Wood
                United States Attorney

Dated: September 15, 2008
   Kansas City, Missouri

8